Good morning. My name is Daniel Tyrekarp. I represent plaintiffs in this action, and I appreciate you hearing us. If it may please the Court, I'll go ahead with my argument. This is a straightforward securities class action against Adidas and its executives for securities fraud that is well-founded on existing Ninth Circuit precedent in the Alphabet and Facebook cases. The facts that plaintiffs allege in this case are supported by reputable news reports and confidential witnesses. Starting in 2013, Adidas started a partnership with Kanye West that was extremely lucrative. By 2021, the partnership, which was the Yeezy brand, was bringing in over $1.5 billion in revenue for Adidas, which represented over 40 percent of the company's profits. On the surface, everything seemed rosy and great, but underneath the surface and behind the scenes, things were far from great. Starting with the very first meeting that Adidas had with Kanye West in Germany in 2013, they were discussing shoe designs, and Mr. West drew a swastika on one of the shoes that they were discussing the design of. And Germany has criminal laws that criminalize any use of a swastika or other Nazi symbols, or any praise of Hitler or his regime. It's a very serious matter. But it didn't stop there. Throughout Mr. West's tenure as a partner with Adidas, he made extremely anti-Semitic comments to Adidas executives, employees, and Yeezy executives and employees. He repeatedly praised Hitler, especially to his Jewish colleagues. He almost got in a fistfight with one of his Israeli Jewish colleagues for telling him to praise Hitler. He ultimately settled a complaint for workplace harassment related to these issues for $5 million, which was reported directly to Adidas' executives, including its CFO, Hans that they should praise Hitler and put a picture up of him on their wall, praise him every day, and that his killing of 30,000 Jews a day was, quote, productive. So, counsel, do you think it was Adidas' responsibility to disclose all of that? Absolutely not. Adidas had no independent duty to disclose any of that under U.S. continue the partnership despite complaints from their employees and knowing about all of this. I'm not one to pass judgment on their business decisions. It's not the court's job to do that either. And as you said, the company had no independent duty to disclose this misconduct or the risk that the misconduct posed to the company or ultimately to its investors. But what the company could not do, what U.S. securities laws precluded the company from doing, was misleading investors about those risks. And that's exactly what Adidas chose to do. And exactly how is your best evidence of the misleading? Because the disclosure statement says unethical business practices, or at least the main one that I'm, and maybe you can refocus me on anything else here, unethical business practices on the part of business partners or improper behavior of individual athletes, influencers or partners in the entertainment committee. Would you agree that included formerly Mr. Kanye West? Yes, I believe that it does. It says could have a negative spillover effect on the company's reputation, lead to higher costs or liabilities or even disrupt business activities. So that's part of their disclosure statement. They're telling them it seems like a reasonable reading and I think we have to use a reasonable investor standard. Do you agree? Yes, that's correct. So in light of that, give me, please address why that was misleading. As this court held in the Alphabet and Facebook cases, disclosing that certain conduct or activity could lead to harms to the business is interpreted by a reasonable investor to be an abstract statement about a hypothetical event that has not taken place. So in the Alphabet case, the disclosure was that concerns about our practices with regard to the collection use disclosure or security of personal information or data privacy related matters could damage our reputation, which is the exact formulation of the disclosure statement here. But the difference in that case though, that they knew that there was a problem and they knew it was going to cause them the reputable harm and then they still captured it in a could. Here, you just don't have that same fact that Kanye's actions were not great, but do you think they is your argument that they've already rose to these issues? So I think that there's no question that his conduct was improper and it's the improper conduct that could lead to the harms to the company, which is the exact same thing that happened in Alphabet and in Facebook, which is that there was a data breach, there was improper access and those events had occurred and it was the public discovery of those events, which had not yet occurred, which would lead to the financial harm and reputational harm to the companies, which is the exact same situation here. Well, is it the exact same situation when Alphabet involved historical data security breaches that the company failed to disclose versus a celebrity partner, apparently, who was exhibiting actions that the public was well aware of as well? And it's not exactly like data, it seems different from data security breaches, but I wanted to give you an opportunity to address that. I think it's a very important point that the public was not aware of this conduct. The public was not aware that Kanye West was a raging anti-Semite. They were not aware that he was praising Hitler or that he was disparaging Jews. None of that was known to the public. It was known to Adidas and its executives. And as soon as it became public, as soon as consumers and the media and the market became aware of that in the fall of 2022, there were swift reactions. His endorsement deals were canceled, Adidas' stock plummeted, and there's no question that he had said controversial things in the past. Okay, so he had said controversial things in the past, and despite that, the profits continued, correct? That's correct. All right. And you're saying that this particular statement is the one that caused that to fall? Yes, a series of statements in the fall of 2022 where he said that he was going to go DEFCON on Jews, and a series of anti-Semitic statements day after day for a month. But that was public. Those were the corrective disclosures, yes. That's when the public first became aware in October 2022. And then there was another stock drop when the public became aware that Adidas had known this for a decade and had not disclosed it, and had not disclosed any of this to investors despite their top executives knowing it, that it happened. So are you saying that the only way to make the disclosure not misleading is for Adidas to disclose that Ye was engaging in this improper behavior? Because it seems like the public's awareness of his improper behavior, even I guess if it wasn't exactly what you're asking, is not missing. So I think there's a big difference between the previous controversial comments, which were things like slavery is a choice, and specifically anti-Semitic comments in praising Hitler, especially for a German company where they have ties to the Hitler regime, and where it's a criminal offense to praise Hitler. It's a criminal offense to draw a swastika. And I think the public reaction to these comments could not be more different. There was a huge public reaction in 2022. He was dropped from all of his brands, all of his endorsements, and Adidas' stock plummeted when they were the ones holding out. They held out longer than the other brands before they dropped it. And I would analogize it to Alphabet, where Alphabet disclosed that we have had data breaches before, and we will likely continue to. But that doesn't mean that they can hide this data breach, this important data breach, which they had failed to disclose. In Cambridge, in the Facebook case, there had been public articles in the Wall Street Journal and the New York Times about the Cambridge Analytica access to Facebook data. And this court held that the full extent of those breaches, of that misuse of data, had not become public. Therefore, the risk disclosures, even though they came after articles specifically about Cambridge materially misleading to investors here, there was no disclosure ever about Kanye West's anti-Semitism. Did you want to reserve? I would like to reserve my time. Thank you very much. I'll give you a minute or two. Thank you. Uh, good morning. May it please the court. Maeve O'Connor for the defendant's appellees. This case is an improper attempt to turn what really is an adverse business development into a claim of securities fraud. Obviously, this partnership was enormously successful while it lasted, and the ending was unfortunate and dramatic and involved hateful public comments. When that happened, when this, when the partnership was terminated, the company's stock price took a hit, and then plaintiffs cast backward for a disclosure to hang the case on. The court is aware the federal securities laws don't provide insurance against adverse business developments. That's not what they're for. And here, perversely, the plaintiff hangs its theory on a risk disclosure that warned of the very thing that came to pass, that improper behavior by a creative partner could adversely impact the company, and if needed, we can terminate those contracts. So the notion that this could become the basis for a securities fraud claim, the fact that the company accurately disclosed a risk that came to pass, turns the securities laws on their head. And what's the between may and could in these kind of statements? If the business partner's risk disclosure said that the improper behavior may have a negative effect on the company, does that change our analysis? No, it doesn't, Your Honor, and I think the thing to focus on is what is it that is being phrased as a hypothetical? So in Alphabet and in Facebook, the thing that was being portrayed as hypothetical itself had happened. If we have a security breach, if our data were to get into the wrong hands, that was phrased as hypothetical. Here, Adidas just said improper behavior of individual athletes could harm our business. So the hypothetical is our business could be harmed. The hypothetical is not that improper behavior of a celebrity partner could occur, and in fact, we would argue that the disclosure as written, and the words do matter, that's the launching off place for the analysis, takes as a given. Well, did Ye's improper behavior here already have a negative effect on the company internally to the point that the executives considered severing the partnership? So I think the chronology here is very important. So plaintiff describes a lot of things. They're almost entirely, if not entirely, at the very early stages of the partnership. They take place between 2013 and 2018. And then there comes an allegation that there was a meeting of executives to determine whether the partnership would continue, whether to devote additional resources to managing it, or whether to terminate it. And then there's a four-year gap in time where there's no allegations of anything happening that was problematic. And that's a huge problem, I think, for the plaintiffs because it just highlights the inherent unpredictability of human behavior and the danger of trying to pin a disclosure requirement on subjective perceptions of a human being's propensity to be a certain way or act a certain way. We have allegations of things that were happening up to 2018, then a big meeting, then four years where there's nothing there. And that silence in the allegations is part of the story, and it can't really be reconciled with plaintiffs' view that as of 2018, it was understood that Mr. West was imminently going to harm the company. The other thing I would point out, Your Honor, if I may, is that unlike Alphabet and Facebook, those two cases, the very events that ultimately became public and caused harm had already occurred at the time of the disclosures. So they were — the distinction then is that unethical business practices or improper behavior are more subjective terms and not a binary objective, whereas in Facebook and Alphabet, it's a data breach and disclosures. Is that what the distinction is, or is there something else? Yeah, I think there are three differences that are critical between this case and Alphabet and Facebook. The first is the language of the disclosure, and ours does not suggest that celebrity misbehavior is a hypothetical. It just says improper behavior by a celebrity partner could harm the company. That's the hypothetical. Second, in Facebook and Alphabet, the risk was a matter of objective fact. These things had happened. They had happened already. And here, it's all subjective perceptions of what is it that we think about Mr. West, and how do we think he's going to behave next, and do we think it's being managed, and do we think it's being managed in a way that Adidas can tolerate? And then third, the risk in Alphabet and Facebook that had, in the Court's view, materialized already at the time of the disclosures was the exact thing, the Cambridge Analytica scandal, the three-year bug, the exact thing that then came to light and caused the harm. Here, the conduct from 2013 to 2018 did not cause harm, and in fact, in that period, there are allegations that Mr. West made public statements that were very hateful about slavery, and that had no impact on the partnership or the relationship. And what caused the breach in the partnership was things he said and did in the fall of 2022. So it's not actually the same thing. So just to kind of reset briefly, you know, risk disclosures, we would say, are a good thing. So Adidas did what it was supposed to. So let me ask, so if the negative effect is only the public fallout and reputational harm, then is your argument that Adidas would be completely off the hook no matter what the company chooses to disclose or not disclose, no matter what the company knows or doesn't know because the hypothetical risk only materializes when the improper behavior becomes public? So I think I'd answer that in two pieces. One is that I think that the risk, and I think that Alphabet and Facebook stand for this proposition as well as some other cases, the risk materialized when the harm of it becomes imminent. And there's no allegation that in any way harm to Adidas was imminent during that whole four-year period. Probably not until the moment when Adidas stated after Ye made some comments about slavery in the fall of 2022 that they were putting the relationship under review. And they stated that publicly. So I think that the key thing I would go back to is the language. So the way that, and how a reasonable investor would read it. And reasonable investors, they live in the world, they read things in context. And I don't think any reasonable investor we would submit would read this statement that just says improper behavior by a celebrity partner could cause harm to the to be saying that the company's celebrity partners are all behaving well. Nobody's ever done anything. There's never been any celebrity misconduct. I don't think that's how a reasonable, objective investor would read this. And I think I would analogize it to a statement of bad press could cause the company to experience harm. And I guess I, thank you. I want to ask you it seems like it was Adidas' most significant celebrity partner and his Yeezy brand made up a substantial percentage of Adidas' sales. So I'm trying to figure out would this context make Adidas' failure to disclose the risk of the behavior material? Because that's the other sort of issue we have to review. So we're not arguing materiality as a basis for, it just typically comes down to be a question of fact. And so we didn't argue that in our motion. I think the plaintiff made some suggestion that the size of the partnership is relevant to cases on Scienter to do with the core operations doctrine. I don't believe that has anything to do with this case at all because that's used to put together an inference of knowledge where there's no knowledge. But I guess just maybe a couple final points. I see my time is running down. I'm going to give him a minute so you can go a minute beyond. Thank you so much, Your Honor. So one thing I just wanted to point out is that on the reasonable investor point, you know, it's notable that when pressed by the district court, my colleague couldn't come up with anything that Adidas should have said instead, right? And that's, I think, because the theory would require Adidas to say something like, oh, by the way, our partner, yay, has a propensity to be anti-Semitic. Or if we're doing that, should we also say, and by the way, he sometimes liked to do pornography to people? Or should we also say, and by the way, he once made a comment about slavery, and do we apply that to all of our celebrity partners? And then do we have to say, well, this celebrity partner, just so you know, was in a nightclub when we heard he was using drugs. What's the process for the company to know about this? How do we figure out what's disclosable? And what does that mean for celebrity partnerships in general? I don't think that any of this sort of subjective HR complaint material works. And the plaintiff has disclaimed the idea that you need to attach actual HR reports of incidents. So I guess we should have said, without explanation, we think that Mr. West has a propensity to say anti-Semitic things. That simply makes no sense. And the four-year gap that we come back to shows how unpredictable human behavior is and how that needs to be, the notion that we should go out there and say Mr. West is anti-Semitic just really doesn't make any sense. And in this context, I think that the four-year gap is a big problem for the plaintiffs. Maybe the final thing I would say in my final seconds here is scienter is another basis for affirmance. The plaintiff can't just name a bunch of things that happened and say, therefore, we think there was scienter. But rather, they have to locate that in an individual who has sufficient seniority for their scienter to be imputed to the company. So in this case, they've tried to locate it in the CFO, Harm Ohlmeyer, who's only alleged to have known two things. This $5 million settlement in 2018 and that there was a big meeting in 2018 about the partnership. And I would submit that's nowhere close to the elevated pleading standard to get to scienter that these disclosures, which do not suggest that celebrity misbehavior is conditional at all, are fraudulent. Thank you. Thank you very much. Thank you. I'd just like to address a few of the points made by my colleague on the other side. First, I think that it is extremely important to understand that the disclosure and alphabet is not a hypothetical about the events. It's a hypothetical exactly the way this is about the effects on the company. The structure of the alphabet disclosure is exactly the same. It says concerns about our practices with regard to collection of personal information or other privacy related matters, even if unfounded, could damage our reputation. It's the exact same formulation here where it endorsers or partners could cause reputational or operational harm to the company. It's the exact same formulation. There's no difference in the formulation. Second, the distinction that counsel tries to make about subjectiveness, the alphabet disclosure is literally about concerns that people may have about their practices. So it's not a concrete fact. It's about concerns that people would have of their practices. And this court found that that was misleading because it suggested to investors that there was no event that would cause those concerns. And I think that counsel is making a lot of the arguments that were in the very well-written Facebook dissent, which I happen to disagree with, that I think this court rejected in the majority opinion that the materialization happens when it's revealed to the public and not when the events happen. Here, the events had already happened. There was improper behavior. There's no question there was improper behavior that had not been disclosed. And that exact same improper behavior continued in 2022, which became the corrective disclosures. As soon as the public found out about it, they were outraged. The company said it was a hypothetical abstract. If improper behavior happened, it could harm the company. Here, it had already happened. As the court said in... I guess the one distinction, though, with Facebook, I mean, I do think they are very close. But here, it is the historical, the fact that, you know, those cases dealt with historical objective fact, whereas whether or not someone acts unethical or improper is a much more subjective term. So, again, I'd say in Alphabet, the disclosure was about concerns that people would have about Alphabet's policies and Alphabet's ability to... Yeah, but of a data breach, right? The data breach was, the court interpreted, said that a reasonable investor would interpret that statement to mean that there hadn't been something that would cause those concerns.  And that is... Well, yeah, but in that case, the data breach was huge, and they all knew it was going to be huge when it got disclosed. Here, you know, whether or not Kanye's, some of those statements, you know, many people may think that they were improper or unethical, but some may say, eh, it's a close call. Well, that's not how the market reacted, right? The market reacted very swiftly and with great magnitude, which did not happen with any of the earlier statements, which I would say is the truth on the market defense, which this court rejected in Facebook when there had been far more public disclosure about the actual events that had happened. There had been articles about the Cambridge Analytica access to Facebook data. Here, there are no articles about Kanye West's anti-Semitism, no articles about his praising Hitler. None of that came out until the fall of 2022. And I would just say the idea that defendants honestly believe that they had mitigated Kanye West's behavior in 2018 flies in the face of all the facts pleaded in the complaint. There's not a single fact showing that they took any of this behavior seriously, that they did a single thing to rein him in. In fact, every article says that they did not. Thank you very much. Thank you. The case of HRSA-ILA funds versus Adidas is now submitted. Mr. Tycarp, Ms. O'Connor, I appreciate your oral argument presentations here today. Thank you.
judges: MURGUIA, OWENS, BUMATAY